[Cite as *State v. Wilson*, 2010-Ohio-2947.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,                                         CASE NO. 1-09-53

    PLAINTIFF-APPELLEE,

  v.

DEVONNE J. WILSON,                                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2009 0101

Judgment Affirmed

Date of Decision:  June 28, 2010

APPEARANCES:

    *Michael J. Short,* for Appellant

    *Jana E. Emerick,* for Appellee

**WILLAMOWSKI, P.J.,**

{¶1} Defendant-Appellant, Devonne Wilson, ("Wilson"), appeals the judgment of the Allen County Court of Common Pleas finding him guilty of two counts of aggravated robbery. Wilson contends that he was denied effective assistance of counsel; that the trial court should have allowed his appointed counsel to withdraw; and that the jury verdict forms contained an error. For the reasons set forth below, the judgment is affirmed.

{¶2} On May 9, 2009, two masked men robbed a Chase Bank at gunpoint, escaping with almost three thousand dollars. Eleven days later, three masked men robbed a Superior Federal Credit Union branch, brandishing guns and ordering the customers to get down on the ground. The robbers escaped with nearly sixteen thousand dollars in cash but, as they were leaving, they were spotted by two customers outside the bank who realized what was happening and attempted to pursue the robbers. The customers phoned the police and provided the license plate number of the escape vehicle.

{¶3} The police found the abandoned vehicle nearby and were able to trace the rented car to Wilson's girlfriend. The girlfriend originally stated the vehicle had been stolen. However, after further questioning, she admitted that her car had not been stolen, but that Wilson had been driving it all day and had ordered her to report it as stolen. The police also searched Wilson's mother's

residence and found guns used in the robbery, work gloves identical to those worn by the perpetrators during the robberies, and half-burnt clothing matching that worn by the perpetrators.

{¶4} The police were able to apprehend Wilson and the others implicated in the two robberies. On May 14, 2009, the Allen County Grand Jury returned a five count indictment charging Wilson with two counts of aggravated robbery, two counts of abduction, and one count of kidnapping, all with a firearm specification. Wilson entered a plea of not guilty and the trial was set for August 31, 2009. Prior to trial, the prosecution dismissed three of the counts, leaving the two aggravated robbery offenses, in violation of R.C. 2911.01(A)(1), with firearm specifications.

{¶5} On August 13, 2009, Wilson's court-appointed counsel filed a motion asking for the trial court's permission to withdraw from the case due to "a serious conflict of personalities." After a hearing on the matter, the trial court denied the motion.

{¶6} On August 24, 2009, defense counsel filed a notice of alibi, which included the names of three potential alibi witnesses who would allegedly testify that Wilson was somewhere else at the time of the robberies. The State objected to their testimony, claiming that it had not received the alibi notice until August 27, 2009, in violation of Crim.R. 12.1, and that the names of the witnesses had not

been provided as part of Crim.R. 16 discovery.[1] The trial court ruled that the alibi witnesses would be permitted to testify, provided the State was given an opportunity to interview the witnesses prior to trial. The State and the supposed alibi witnesses did not meet and, therefore, the trial court did not permit them to testify.

{¶7} At trial, the jury heard testimony from numerous witnesses, including Wilson's girlfriend, Raelishia McWay, who testified in detail how Wilson had gone to check out the bank beforehand; had left with his gun on the day of the robbery and returned to the apartment with a large amount of money in a plastic bag matching the one used in the robbery; that he had borrowed the get-away car used in the second robbery and then instructed her to report it stolen; that Wilson's cell phone number matched that of the phone found in that car; that Wilson's gun was the same as the gun used in both of the robberies; and that he had admitted to her that he had robbed the banks.

{¶8} Raylon Hardy testified that he had assisted Wilson and Maurice Graves in robbing the Superior Federal Credit Union; that each of them was assigned a role in the robbery; that Graves was to hop the counter just as he had done the "last time" (referring to the robbery of the Chase Bank); that Graves had borrowed Hardy's gun to use in the Chase robbery; and that the three of them, plus

---

[1] Crim.R. 12.1 requires a defendant who proposes to offer testimony to establish an alibi to file and serve written notice upon the prosecuting attorney not less than seven days before trial. Crim.R. 16 pertains to discovery disclosure, including witness names and addresses.

the get-away driver, executed the robbery, made their escape, split up the money, and then left the guns and masks at Wilson's mother's home.

{¶9} Phone records and computer records further corroborated the communication between the participants concerning the robberies, and police officers testified to finding Wilson's cell phone in the get-away car and to finding the guns and other evidence at Wilson's mother's home. After a three-day trial, the jurors found Wilson guilty of both counts of aggravated robbery, with the firearm specifications.

{¶10} On September 8, 2009, the trial court sentenced Wilson to ten years in prison for each of the two robberies, which were first-degree felonies, and three years for each of the firearm specifications, with all sentences to be served consecutively, for a total of twenty-six years in prison. It is from this judgment that Wilson appeals, raising the following three assignments of error for our review.

**First Assignment of Error**

**The Defendant was denied effective assistance of Counsel.**

**Second Assignment of Error**

**The trial court erred in not permitting the withdraw[al] of court appointed counsel.**

**Third Assignment of Error**

**The trial court erred in providing an erroneous verdict form to the jury.**

{¶11} In the first assignment of error, Wilson claims that he was denied effective assistance of counsel because defense counsel failed to timely file a notice of alibi in accordance with Crim.R. 12.1, and he did not furnish the names of the alibi witnesses to the State as part of Crim.R. 16 discovery. Even so, the trial court was still going to allow the alibi witnesses to testify if defense counsel made the witnesses available for the State to interview at the courthouse, either by 5:00 p.m. on August 31, 2009, or at 8:00 a.m. the following morning. Wilson claims that trial counsel failed to do so, thereby denying the opportunity for the jury to hear alibi testimony that would have produced reasonable doubt.

{¶12} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306, 2001-Ohio-191, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Moreover, "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998-Ohio 343, 693 N.E.2d 267. "To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. In

establishing whether counsel's performance was deficient, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Kole*, 92 Ohio St.3d at 306, 2001-Ohio-191, 750 N.E.2d 148, quoting *Strickland*, 466 U.S. at 687. An appellate court must review the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Stacy*, 3d Dist. No. 13-08-44, 2009-Ohio-3816, ¶20.

{¶13} Wilson claims that his attorney made errors that resulted in the exclusion of the testimony of witnesses whom he wished to call at trial in an effort to establish an alibi. Although the notice of alibi was not filed until a week before the trial, the record reflects that Wilson did not provide defense counsel with the names until only a week prior to his filing the notice of alibi. Furthermore, there had been a strong difference of opinion between counsel and his client as to whether or not an alibi should be filed. (Trial Tr., pp. 5-6.) Defense counsel issued subpoenas for the witnesses to appear and he instructed the witnesses to appear to meet with the prosecutor at the designated times. There was some discussion on the record that the witnesses had been at the courthouse, but did not stay to meet with the prosecutors.

{¶14} As noted above, it was Wilson himself who failed to express a wish to present alibi witnesses or provide the names of those witnesses to defense counsel until close to trial, despite the fact that the crimes had occurred in March

-7-

and counsel had been representing Wilson and working on the case for many months. Furthermore, there was a strong difference of opinion between defendant and his counsel as to whether those witnesses should be used. (Trial Tr., p. 6.) The record reflects that defense counsel attempted to make the witnesses available. Furthermore, sometimes counsel's noncompliance with applicable rules of disclosure may be construed as a trial tactic. See, e.g., *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. As this Court has previously noted, debatable strategic and tactical decisions may not form the basis of an ineffective assistance of counsel claim, even if a better strategy might have been utilized. *State v. Utz*, 3d Dist. No. 3-03-38, 2004-Ohio-2357, ¶12, citing *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643. The decision to call or not call witnesses is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of the effective assistance of counsel. *Ulz*, citing *State v. Williams* (1991), 74 Ohio App.3d 686, 694, 600 N.E.2d 298.

**{¶15}** Based on the above, and the totality of the record showing counsel's diligent representation, we do not find that counsel's performance was deficient or unreasonable under the circumstances. Wilson's first assignment of error is overruled.

**{¶16}** In his second assignment of error, Wilson maintains that the trial court erred when it denied defense counsel's motion to withdraw. At the hearing on the motion, defense counsel indicated that there was a "strong personality

conflict" between Wilson and himself, although he did not go into detail on the nature of this conflict, stating that it would be inappropriate to do so. Wilson contends that the trial court should have conducted further inquiry as to the nature of the conflict in order to ensure that such a conflict would not have prevented counsel from providing effective representation.

{¶17} The Sixth Amendment right to counsel does not guarantee a defendant the right to counsel of his choosing, and there must be good cause to justify a substitution of counsel. *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765. In order to remove a court-appointed attorney from a case, there must be "a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Hennes*, 79 Ohio St.3d 53, 65, 1997-Ohio-405, 679 N.E.2d 686, quoting *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus. The Sixth Amendment does not guarantee "rapport" or a "meaningful relationship" between client and counsel. *State v. Hennes*, supra, citing *Morris v. Slappy* (1983), 461 U.S. 1, 13-14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621. The decision not to remove court-appointed counsel is reviewed under an abuse of discretion standard. *Murphy*, 91 Ohio St.3d at 523.

{¶18} At the hearing on defense counsel's motion to withdraw, the trial court did attempt to make further inquiry into the reasons behind the motion, but Wilson did not take the opportunity to elaborate. Defense counsel had stated "my

client and I have a strong personality conflict," and that it wouldn't be appropriate to go into the specifics of any of the discussions they had.[2] (Aug. 17 Hearing Tr., p.1.) The trial court then attempted to obtain more information from Wilson.

> **The Court: Mr. Wilson, what do you have to say about this?**
>
> **Mr. Wilson: I agree with him.**
>
> **The Court: Is that all you have to say?**
>
> **Mr. Wilson: Yes.**

(Id., at p. 2.) The trial court concluded that the since the only issue before the court was a personality conflict, that reason did not warrant a change in counsel according to law, citing *Morris v. Slappy*, and *State v. Hennes*, supra. The trial court also observed that in order to replace counsel because of a conflict, there must be an actual conflict of interest, not merely a personality conflict. *Hennes*, 79 Ohio St.3d at 65, citing *Strickland v. Washington*, supra. Furthermore, there already had been months of discovery, motions, hearings, and trial preparation, and the trial was scheduled to commence within two weeks.

{¶19} Based on the above, the trial court did not abuse its discretion in denying counsel's motion to withdraw. Wilson's second assignment of error is overruled.

---

[2] Although counsel would not give any further reason at the hearing, just prior to trial he further indicated that "there is a strong difference of opinion as to whether or not there would be an alibi filed," which would appear to indicate that the motion to withdraw had something to do with the alibi. (Trial Tr., p. 6.)

{¶20} In his final assignment of error, Wilson asserts that the trial court provided an erroneous verdict form to the jury. The verdict form stated, "we the jury, *** find beyond a reasonable doubt, the Defendant, Devonne J. Wilson _____ of aggravated robbery." The jury was to put their finding of "guilty" or "not guilty" on the blank line. Wilson complains that the wording on the form gave the jury two choices: 1) to find him guilty beyond a reasonable doubt; or, 2) to find him not guilty beyond a reasonable doubt. Wilson raised an objection at trial because the latter choice set forth an erroneous burden of proof and an incorrect statement of the law. Wilson claims that the use of this defective form mandates reversal of the conviction because the error constitutes a "structural error."

{¶21} The State acknowledges that the wording of the verdict forms could have been more precisely crafted so as to avoid the issue raised here. However, the State contends that the wording of the verdict forms does not amount to reversible error, particularly when considered with the instructions in their entirety that were given to the jury before their deliberations.

{¶22} In most cases, when a defendant is represented by counsel and is tried by an impartial adjudicator, there is a presumption that any trial errors are not structural errors, but are subject to Crim.R. 52 harmless-error analysis. *State v. Cihonski*, 178 Ohio App.3d 713, 2008-Ohio-5191, 900 N..E.2d 212, ¶18, citing *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶78. Rarely,

an error may be so egregious that it rises to the level of a structural error. *Colon*, 2008-Ohio-1624, at ¶20. In *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶9, the Ohio Supreme Court discussed the differences between structural errors and trial errors.

> **In *Arizona v. Fulminante* (1991), 499 U.S. 279, 306-312, 111 S.Ct. 1246, 113 L.Ed.2d 302, the United States Supreme Court denominated the two types of constitutional errors that may occur in the course of a criminal proceeding – "trial errors," which are reviewable for harmless error, and "structural errors," which are per se cause for reversal. \*\*\* "Trial error" is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." \*\*\* "Structural errors," on the other hand, "defy analysis by 'harmless error' standards" because they "affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." [*Fulminante*] at 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Consequently, a structural error mandates a finding of "per se prejudice."**

{¶23} Both the United States Supreme Court and the Supreme Court of Ohio have rejected the concept that structural error exists in every situation in which even a serious or a constitutional error has occurred. See *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶18. In fact, the United States Supreme Court and Ohio courts have found structural errors warranting

reversal in only a very limited number of cases. See *Cihonski*, 2008-Ohio-5191, at ¶¶20-21.[3]

**{¶24}** Wilson argues that an "incorrect reasonable doubt instruction" is one of the limited class of cases which "always requires reversal of the conviction" because it constitutes a structural error, citing to *Sullivan v. Louisiana* (1993), 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182. However, we find that the incorrect reasonable doubt instruction in *Sullivan* involved an entirely different issue than the issue that is before us in this case. *Sullivan* involved a death penalty appeal in which the *definition* of "reasonable doubt" was identical to one previously held unconstitutional. In *Sullivan*, because the essential definition of "reasonable doubt" upon which the jury based its decision was wrong, there could be no factual findings made by the jury beyond a reasonable doubt upon which an appellate court could base a harmless-error analysis. Id. at 2082. It would be tantamount to a jury determining that the defendant was *probably* guilty, and then leaving it up to the judge to determine whether he was guilty beyond a reasonable

---

[3] For example, the United States Supreme Court has found structural errors warranting reversal where the defendant was completely denied counsel, *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; where the trial judge was biased, *Tumey v. Ohio* (1927), 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749; where racial discrimination took place in grand jury selection, *Vasquez v. Hillery* (1986), 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598; where the defendant was denied self-representation at trial, *McKaskle v. Wiggins* (1984), 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122; where the defendant was denied a public trial, *Waller v. Georgia* (1984), 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31; and where the instruction on reasonable doubt was defective, *Sullivan v. Louisiana* (1993), 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182. Likewise, Ohio courts have recognized structural error in only a limited number of cases, such as where a defective indictment led to multiple, significant errors throughout a trial, *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, on reconsideration, *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d. (See *Chonski* for other examples.)

doubt, thereby denying the defendant of his Sixth Amendment right to a trial by jury. Id. at 2081.

{¶25} A review of the record in Wilson's case reveals that the jury was repeatedly instructed that it was mandatory that the defendant be found not guilty unless the State had proven the elements of the crimes beyond a reasonable doubt. None of the instructions implied that Wilson had any burden of proof as to his innocence. To the contrary, the jury was specifically instructed that the defendant was *not* required to prove his innocence beyond a reasonable doubt. Specifically, the jury was instructed as follows:

> **The defendant is presumed innocent until his guilt is established beyond a reasonable doubt. The defendant must be acquitted unless the state produces evidence, which convinces you, beyond a reasonable doubt, of every essential element of the crime charged in the indictment.**
>
> **The defendant in a criminal case is not required to present any evidence, and if he chooses to present evidence, *such evidence need not convince you beyond a reasonable doubt of his innocence*. Rather it need only raise a reasonable doubt as to his guilt. If, after considering the evidence as a whole you have reasonable doubt as to the defendant's guilt, you must acquit him.**

(Trial Tr., pp. 506-07, emphasis added.) The trial court then defined "reasonable doubt" for the jury, and further instructed that:

> **If, after a full and impartial consideration of all the evidence, you are firmly convinced of the truth of the charge, the state has proved its case beyond a reasonable doubt.**

**If you are not firmly convinced of the truth of the charge or charges, you must find the defendant not guilty.**

(Trial Tr., p. 507.)  The trial court gave additional instructions relating to the case and further instructed the jury that before the jury could find the defendant guilty, it must find beyond a reasonable doubt that Wilson committed each element of the offense, which the trial court then specified, and further instructed:

> **If you find as to Count 1 – if you find the state has proved, beyond a reasonable doubt, all the essential elements of aggravated robbery, your verdict must by guilty of aggravated robbery.**
>
> **If you find the state has failed to prove, beyond a reasonable doubt any one of the essential elements of aggravated robbery, your verdict must be not guilty of aggravated robbery as charged.**

(Trial Tr., pp. 512-16.)  The trial court then gave an identical instruction as to the second count, except for modifying the date as appropriate.  Finally, the jury was instructed that "[i]t is your duty to carefully weigh the evidence, to decide all disputed questions of fact, to apply the instructions of the court to your findings, and to render your verdict accordingly".  (Trial Tr., p. 524.)

{¶26} After reviewing the record, we conclude that the instructions in this case did not render the trial so fundamentally unfair that it could not be a reliable vehicle for the determination of the defendant's guilt or innocence.  See *Rose v. Clark*, 478 U.S. at 577-578, 106 S.Ct. 3101, 92 L.Ed.2d 460.  This case did not rise to a violation of a fundamental constitutional right that would lead to the kind

of basic unfairness amounting to structural error. Therefore, the alleged error must be reviewed under the harmless error standard. Harmless error is defined as: "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Harmless error does not affect the outcome of the case and, thus, does not warrant a judgment to be overturned or set aside. *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶7; see, also, *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶15.

**{¶27}** In a similar case reviewed by the Eleventh District Court of Appeals, an almost identical jury form was used and the reviewing court did not find that the error rose to a level requiring reversal. See *State v. Schlee*, 11th Dist. No. 1004-L-070, 2005-Ohio-5117, ¶14. Although the appellate court in *Schlee* reviewed the jury instruction under a plain error standard, we find their conclusion instructive.

> **Accordingly, while the jury verdict form itself was flawed, when taken as a whole, the jury instructions were not so tainted as to rise to the level of plain error. The trial court's other instructions limited any potential prejudice. There was overwhelming evidence of appellant's guilt presented at trial so, but for the flaw in the jury verdict form this court can not conclude that the outcome of the trial would have been different.**

Id.

**{¶28}** Likewise, in the case before us, in light of the overall instructions of law provided to the jury and also in light of the overwhelming evidence presented

-16-

as to Wilson's guilt, we do not find that the wording of the jury form affected a substantial right or in any way affected the outcome of Wilson's trial. Based upon the facts of this case, any flaw in the verdict forms was harmless error. Wilson's third assignment of error is overruled.

{¶29} Therefore, having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jnc**

**ROGERS, J., concurs in part, dissents in part.**

{¶30} I concur fully with the majority's disposition of the first and second assignments of error; however, I respectfully dissent from the majority's disposition of the third assignment of error. As stated in the majority opinion, the jury verdict form instructed that, to find the defendant "not guilty," the jury must find him not guilty "beyond a reasonable doubt." Unlike the majority, I would find that this error in the jury verdict form amounted to a structural error not subject to harmless error analysis. I agree with the majority's finding that this factual scenario differs from that in *Sullivan v. Louisiana* (1993), 508 U.S. 275, in that it did not contain a Sixth Amendment defect; however, I believe that the form was still constitutionally deficient because it did not comport with the Fifth Amendment requirements of presumption of innocence and that a guilty verdict

must be supported by proof beyond a reasonable doubt. Thus, I would reverse on the basis that the jury verdict form was constitutionally deficient as it was a "denial of the right to a jury verdict of guilt beyond a reasonable doubt, the consequences of which are necessarily unquantifiable and indeterminate" and, consequently, that the error was a structural defect. See *Sullivan*, 508 U.S. 275, at syllabus.

{¶31} It is an acceptable practice to use a single verdict form which simply says:

**We, the jury, find the defendant, (*insert name of defendant*),**

**(\*) _____ of (*insert name of offense and section number*[4]).**

**(\*) *Insert in ink*: "Guilty" or "Not Guilty."**

OJI CR 425.33, Verdict.

{¶32} I believe that a better practice would be to provide two verdict forms for each offense presented to the jury for consideration.

{¶33} One to say:

**We, the jury, find the defendant, (*insert name of defendant*),**

**guilty beyond a reasonable doubt of (*insert name of offense and***

***section number).***

---

[4] I would suggest inclusion of the section/subsection number to avoid any issues as to the degree of the offense, as delineated in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256.

**{¶34}** The other to say:

**We, the jury, find the defendant, (*insert name of defendant*), not guilty of (*insert name of offense and section number*).**