OPINION
{¶ 1} Appellant, Jon D. Meeks, appeals from the March 1, 2007 judgment entry of the Lake County Court of Common Pleas, which sentenced him to a sixteen month prison term after he was found guilty by jury for one count of grand theft of a motor vehicle. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural History *Page 2 
 {¶ 3} Appellant ("Mr. Meeks"), was indicted by the Lake County Grand Jury on December 22, 2006, for one count of grand theft of a motor vehicle, in violation of R.C. 2913.02(A)(2), a felony of the fourth degree. Mr. Meeks entered a plea of not guilty on December 29, 2006, and his bond was set at $7,500.
 {¶ 4} Mr. Meeks, pro se, filed a motion to dismiss his attorney and appoint a new attorney pursuant to R.C. 2945.52 on January 17, 2007. Subsequently, the court held a hearing on the motion and ultimately found Mr. Meeks' complaints to be without merit. As such, the court determined that the appointment of new counsel would be inappropriate on the eve of trial, which was scheduled for January 29, 2007, since Mr. Meeks was also refusing to sign a waiver of a speedy trial unless a new attorney was assigned.
 {¶ 5} A jury trial was held on January 29, 2007, in which the state presented the testimony of four witnesses: Deputy Andrew J. Gustie ("Deputy Gustie") of the Lake County Sheriffs Office; Officer Timothy L. Thompson ("Officer Thompson") from the Eastlake Police Department; Mr. Greg S. Turner ("Mr. Turner") co-owner of RR Motors, the owner of the vehicle; and Ms. Laurie Meeks ("Ms. Meeks") Mr. Meeks' ex-wife. The state also entered into evidence the title of the stolen vehicle and photographs of the crash scene. The defense entered Mr. Meeks' medical records into evidence.
 {¶ 6} The evidence presented at trial revealed that on October 17, 2006, at approximately 3:45 p.m. Mr. Meeks went to RR Motors, a used car dealership in Painesville, Ohio, where he approached one of the co-owners, Mr. Turner, about purchasing a car. Mr. Meeks relayed to Mr. Turner that his car had broken down about *Page 3 
one mile down the road and that he wanted to buy a car "real quick." He had his eye on a 1996 Pontiac Sunbird, and told Mr. Turner that he had one in the past and that he would like to take it for a test-drive to show his wife, who he said was waiting in the broken car on the side of the road. He estimated that he would return in ten to fifteen minutes. He told Mr. Turner that he did not have his driver's license with him, so he gave Mr. Turner a photo identification card, who in turn put dealer license tags on the vehicle and gave Mr. Meeks the keys. However, Mr. Meeks did not return within fifteen minutes. The afternoon progressed and around closing time, Mr. Turner grew very concerned and called the Lake County Sheriffs Office.
 {¶ 7} Deputy Gustie from the Lake County Sheriffs department responded to Mr. Turner's call at approximately 5:53 p.m. After taking down the relevant information from Mr. Turner, Deputy Gustie reported the vehicle as stolen and entered the vehicle's information into the Law Enforcement Agency Data System ("LEADS") and attempted to find Mr. Meeks' address from the photo identification Mr. Meeks had given Mr. Turner. At around 6:15 p.m. Mr. Meeks admitted himself to South Pointe Hospital in Warrensville Heights because he was suffering from chest pains.
 {¶ 8} Two days later, on the morning of October 19, 2006, Mr. Meeks fled the hospital without being properly discharged. At around 9:40 a.m. Officer Thompson of the Eastlake Police Department received a call that there was a fairly serious motor vehicle accident on Vine Street. The Pontiac Mr. Meeks had been driving eastbound turned left in front of another motor vehicle, which was heading in the opposite direction. Mr. Meeks crashed into the front driver's side of the other vehicle, the airbags deployed, and the collision totaled the Pontiac and damaged the other vehicle. Officer Christian *Page 4 
of the Eastlake Police Department was already on the scene, and he reported to Officer Thompson that one of the operators of the vehicles had fled the scene on foot. He provided a description of this driver and indicated the direction the driver was last seen running.
 {¶ 9} Officer Thompson turned his patrol car in that direction and as he was proceeding down Vine Street the proprietor of Arko Auto Sales rushed out and inquired as to whether Officer Thompson was looking for one of the drivers from the auto vehicle accident. He then directed Officer Thompson to the alleyway behind Jeanne's, a bar that was located on Vine Street and East 361st Street. Officer Thompson stopped the patrol car and proceeded down the alleyway on foot where he observed a male matching Officer Christian's description. He jogged up to the male and when he was about thirty yards away, informed the individual that he was a police officer and ordered him to turn around and stop. Mr. Meeks, however, ignored him. Officer Thompson saw that he had two bags in his hands, and he again ordered Mr. Meeks to stop. Mr. Meeks finally turned around but still failed to comply with the officer's order to get down. Officer Thompson, not knowing what Mr. Meeks was carrying, and in fear of his safety, moved to take Mr. Meeks down and handcuff him. He successfully restrained Mr. Meeks and was about to handcuff him when he noticed that Mr. Meeks had an IV reservoir hanging out of his hand and a hospital bracelet dangling from his wrist. After assessing that Mr. Meeks did not present a threat, he decided not to handcuff him, and he called fellow officers to advise them of his location.
 {¶ 10} At that point, Officer Thompson tried to engage Mr. Meeks in conversation in order to identify him. Mr. Meeks gave him a false birth date and social security *Page 5 
number. Officer Perkins, of the fire department, arrived on the scene, which gave Officer Thompson an opportunity to search Mr. Meeks' bags for proper identification. A LEADS check revealed that the Pontiac had been stolen. Upon finding proper identification in Mr. Meeks' bag and running the information through dispatch, Officer Thompson discovered that Mr. Meeks was also driving with a suspended license. Officer Thompson asked Mr. Meeks about the stolen vehicle, to which Mr. Meeks replied that he stole the vehicle a couple of days ago. Mr. Meeks then started to complain that he was having trouble breathing, but he refused to tell the officers why he had an IV reservoir in his hand or why he was wearing a hospital bracelet. The officers called rescue to the scene, who took Mr. Meeks to Hillcrest Hospital.
 {¶ 11} Although Mr. Meeks had informed Mr. Turner that he wanted to test drive the vehicle and to show the vehicle to his wife, who was waiting with the broken car, Mr. Meeks is not married. His ex-wife, Ms. Meeks, testified that she was not in the Painesville area during the time this incident occurred either on October 17, 18, or 19, 2006. She did, however, speak with Mr. Meeks on each of those days. On October 17, after receiving a call from the hospital regarding Mr. Meeks' insurance coverage, she called him to inquire as to why the hospital would be contacting her. Mr. Meeks informed her that he was in hospital, that he was not feeling well, and that he had borrowed a friend's vehicle to get to the hospital. He also spoke with Ms. Meeks on October 18 and October 19, but each time made no mention of the stolen car.
 {¶ 12} At the close of the evidence, Mr. Meeks' counsel made a Crim.R. 29 motion for acquittal, which was denied. The jury returned a verdict of guilty, finding Mr. Meeks guilty of one count of grand theft of a motor vehicle, in violation of R.C. *Page 6 2913.02(A)(2), a felony of the fourth degree. Sentencing was then deferred until February 29, 2007, and the matter was referred to the adult probation department for a pre-sentence investigation and report, a drug and alcohol evaluation, and a DNA sample.
 {¶ 13} On February 16, 2007, Mr. Meeks filed a pro se motion to declare a mistrial due to ineffectiveness of counsel and errors by the state and the court. Mr. Meeks then filed a sentencing memorandum for consideration on February 26, 2007, urging the court for community control sanctions that included a jail treatment program followed by longer term treatment at the Northeast Ohio Community Alternative Program ("NEOCAP"), after which he requested a release to a sober house, with a suspended prison sentence of less than one year.
 {¶ 14} The court held a sentencing hearing on February 28, 2007, at which time Mr. Meeks' motion to declare a mistrial and his motion to stay execution of sentence and for appellate bond were both denied. The court then sentenced Mr. Meeks to sixteen months in prison, with one hundred fourteen days of credit for time served and ordered him to pay court costs. Further, the court did not recommend that Mr. Meeks be placed in shock incarceration or an intensive prison program, and notified him that he would be subject to post-release control for up to three years.
 {¶ 15} Mr. Meeks timely appealed and now raises the following two assignments of error:
 {¶ 16} "[1.] The trial court committed plain error in failing to instruct the jury concerning the lesser included offense of unauthorized use of a motor vehicle. *Page 7 
 {¶ 17} "[2.] The trial court erred in instructing the jury concerning the appellant's `flight.'"
 {¶ 18} Jury Instruction for Lesser Included Offense
 {¶ 19} In his first assignment of error, Mr. Meeks contends that the trial court committed plain error in failing to instruct the jury on the lesser included offense of unauthorized use of a motor vehicle. Specifically, Mr. Meeks contends that the evidence presented at trial could reasonably have supported an acquittal on the charge of theft of a motor vehicle and a conviction for the lesser offense of unauthorized use. For the following reasons, we find this contention to be without merit.
 {¶ 20} "It is well established that `the failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would havebeen otherwise.'" (Emphasis added.) State v. Schlee, 11th Dist. No. 2004-L-070, 2005-Ohio-5117, ¶ 28, citing State v. Underwood (1983),3 Ohio St.3d 12, syllabus, citing State v. Long (1978), 53 Ohio St.2d 91; Crim.R. 52(B). "Furthermore, `notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id. citingState v. Gordon (Mar. 22, 1996), 11th Dist. No. 92-A-1696, 1996 Ohio App. LEXIS 1078, 3-4, quoting Long at paragraph three of the syllabus.
 {¶ 21} "An offense may be considered a lesser included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense." State *Page 8 v. Bucci, 11th Dist. No. 2001-L-091, 2002-Ohio-7134, ¶ 13, citingState v. Deem (1988), 40 Ohio St. 3d 205, paragraph three of the syllabus; State v. Hill (June 15, 2001), 11th Dist. No. 2000-L-021, 2001 Ohio App. LEXIS 2718, 2. "Although an offense may be statutorily defined as a lesser included offense, an instruction to the jury on the lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense." Id. citing State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus; Hill at 3.
 {¶ 22} "Grand theft of a motor vehicle" pursuant to R.C. 2913.02 is defined as:
 {¶ 23} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * *
 {¶ 24} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; * * *
 {¶ 25} "(B)(5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."
 {¶ 26} Pursuant to R.C. 2913.03, "unauthorized use of a motor vehicle" is defined as:
 {¶ 27} "(A) No person shall knowingly use or operate * * * [a] motor vehicle * * * without the consent of the owner or person authorized to give consent.
 {¶ 28} "(B) No person shall knowingly use or operate * * * [a] motor vehicle * * * without the consent of the owner or person authorized to give consent, and either remove it from this state or keep possession of it for more than forty-eight hours." *Page 9 
 {¶ 29} There is no doubt that the unauthorized use of a motor vehicle is a lesser included offense of grand theft of a motor vehicle since the common elements to both offenses are (a) knowing use (b) of a motor vehicle (c) without consent. A fourth element, that of the intent to deprive, is found only in the greater offense of grand theft of a motor vehicle. State v. Smead (Feb. 7, 1989), 2d Dist. No. 10922, 1989 Ohio App. LEXIS 392, 7-8. However, "[although an offense may be statutorily defined as a lesser included offense, an instruction to the jury on the lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense." Bucci at ¶ 13, citingThomas, paragraph two of the syllabus; Hill at 3.
 {¶ 30} In this case, we review for plain error since Mr. Meeks' counsel failed to object to the jury instruction on "grand theft of a motor vehicle." Although Mr. Meeks offered his medical record as evidence that his intent was not to deprive Mr. Turner of the Pontiac due to his hospital visit, we cannot say that but for the failure to give this instruction, the outcome of trial would have been different. Rather, the evidence reveals that Mr. Meeks went to RR motors, knowing that he had a suspended driver's license, with the intent to deprive them of the vehicle. He relayed to Mr. Turner a fabricated story that contained not one iota of truth as his car was not broken down and he is unmarried. Moreover, if his intent was simply to test-drive the vehicle, there were numerous opportunities for Mr. Meeks to call RR Motors or his ex-wife, with whom he spoke to every day after he drove the car of the lot. Further, his ex-wife testified that Mr. Meeks explained to her that he had borrowed a friend's car to reach the hospital. *Page 10 
 {¶ 31} This is not a case of someone using a motor vehicle simply without the consent of the owner. There was simply no evidence to controvert the state's evidence that Mr. Meeks took the motor vehicle through deceit and subterfuge with the intent to permanently deprive RR Motors of their vehicle.
 {¶ 32} Mr. Meeks cites State v. Young, 8th Dist. No. 79243, 2002-Ohio-2744, as support for the proposition that the failure to give the lesser included instruction of unauthorized use of a motor vehicle is plain error in this case. However, this case is readily distinguishable as the appellant, who was using the car of his ex-girlfriend, did have permission in the past to use the car. Further, the alleged theft occurred in the owner's presence and more fundamentally, the owner rode with the appellant in the car after the alleged theft occurred. Thus, in Young, the court was justified in finding plain error.
 {¶ 33} Unlike the fact pattern presented in Young, this is not a case of joyriding or simply borrowing a vehicle. Rather, this is a classic case of theft, which involved a permanent intent to deprive. Mr. Meeks argued that he left the hospital without being discharged to return the vehicle when he crashed the car on the morning of October 19, 2006. However, there is simply no evidence to support this claim, especially since there is testimony that Mr. Meeks crashed the vehicle in Eastlake, a more than twenty minute drive from RR Motors, which is located in Painesville.
 {¶ 34} Quite simply, the jury could not have reasonably acquitted Mr. Meeks of grand theft of a motor vehicle in this case, and yet convicted him only of unauthorized use of a motor vehicle when the evidence unquestionably supports an intent to permanently deprive. Thus, the failure to give an instruction on the lesser included *Page 11 
offense of unauthorized use of a motor vehicle does not rise to the level of plain error in this case.
 {¶ 35} Mr. Meeks' first assignment of error is without merit.
 {¶ 36} The Propriety of Appellant's "Flight" Instruction to theJury
 {¶ 37} In his second assignment of error, Mr. Meeks contends that the trial court erred in instructing the jury in regard to his "flight" from the scene. Specifically, Mr. Meeks argues that the evidence was insufficient to warrant such an instruction to the jury. We find this contention to be without merit.
 {¶ 38} "It is well established that flight is admissible as evidence tending to show consciousness of guilt." State v. Martin (Apr. 28, 1995), 11th Dist. No. 93-L-015, 1995 Ohio App. LEXIS 1775, 4, citingSibron v. New York (1968), 392 U.S. 40, 60; State v. Richey (1992),64 Ohio St. 3d 353, 357. "An instruction on flight is proper if there is sufficient evidence in the record to support the charge." Id. (Citations omitted.)
 {¶ 39} "The decision whether to issue an instruction on flight rests within the sound discretion of the trial court and, absent an abuse of that discretion, will not be reversed on appeal." Id. at 4-5, citingState v. Kelly (Sept. 15, 1989), 11th Dist. No. 1465, 11. See, also,State v. Sims (1984), 13 Ohio App. 3d 287, 289.
 {¶ 40} Mr. Meeks contends that a flight instruction should not have been given because he did not "indefinitely wait at the scene of a crime to be caught." Rather, he argues that his flight from the scene is not the same as leaving the state or actively avoiding contact with the police and thus, a flight instruction was not warranted in this case. *Page 12 
 {¶ 41} From the facts presented at trial, we conclude that the trial court did not abuse its discretion in allowing a flight instruction given the circumstances of this case. The evidence is uncontroverted that Mr. Meeks fled, running from the scene with a bag in each hand, and that he was caught quite some distance away in an alleyway when Officer Thompson caught up to him. Mr. Meeks then ignored Officer Thompson's requests for him to stop and turn around. We are baffled as to what would constitute "flight" if we were to find that under these circumstances Mr. Meeks did not flee the scene. In fact, he left the scene of a fairly serious motor vehicle accident with another elderly driver, an accident which he caused, and then he took off down an alleyway.
 {¶ 42} In addition, we note that Mr. Meeks' counsel questioned Officer Thompson on Mr. Meeks' possible motivations for flight in the following colloquy during cross-examination:
 {¶ 43} "Mr. Mathews [Mr. Meeks' counsel]: So his license was under suspension?"
 {¶ 44} "Officer Thompson: Correct."
 {¶ 45} "Mr. Mathews: And that offense in and of itself carries a potential six month jail term, correct?"
 {¶ 46} "Officer Thompson: Correct."
 {¶ 47} "Mr. Mathews: Might that not in and of itself be a reason to flee an accident scene?"
 {¶ 48} "Officer Thompson: Yea, one reason I'm sure."
 {¶ 49} Moreover, "[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false *Page 13 
name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." State v. Love (May 11, 2001), 11th Dist. No. 99-L-051, 2001 Ohio App. LEXIS 2147, 11. As we stated inLove, "[a]ppellant argues that there was no evidence that he fled from justice to support the giving of such an instruction. The trial court did not state that appellant had fled. It merely stated that there was evidence that appellant had fled, but left it up to the jury to decide whether he had or not. The instruction was not improper." Id. at 11-12.
 {¶ 50} Mr. Meeks' second assignment of error is without merit.
 {¶ 51} The judgment of the Lake County Court of Common Pleas is affirmed.
 CYNTHIA WESTCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur. *Page 1