[Cite as *State v. Whitman*, 2013-Ohio-5822.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0031** |
| CHRISTOPHER A. WHITMAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2008 CR 304.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Rhonda L. Granitto Santha,* 6401 State Route 534, Farmington, OH 44491 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Christopher A. Whitman, appeals his conviction and sentence, following a jury trial in the Ashtabula County Court of Common Pleas, for Grand Theft of a Motor Vehicle. The issues to be determined by this court are whether trial counsel is ineffective by requesting the admission of an entire police case file, which contains evidence unfavorable to the defendant, as an exhibit; whether the trial court errs by failing to instruct the jury on a lesser included offense of Unauthorized Use

of a Motor Vehicle when the evidence presented supports a Grand Theft of a Motor Vehicle conviction; and whether a presentence investigation report is required when the court sentences a defendant to prison on a felony conviction. For the following reasons, we affirm the judgment of the trial court.

{¶2} On August 8, 2008, the Ashtabula County Grand Jury issued an Indictment, charging Whitman with one count of Grand Theft of a Motor Vehicle, a felony of the fourth degree, in violation of R.C. 2913.02.

{¶3} A jury trial was held in this matter on July 6, 2009. The following pertinent testimony and evidence were presented.

{¶4} Corey Schultz testified regarding the events that occurred on the night of July 4, 2008, which led to the alleged theft of his motorcycle. His father, William Schultz, held a party at his home, where Corey also lived, in Geneva, in Ashtabula County. Invited to the party were William's softball teammates, as well as some of Corey's friends. At the home, Corey parked his Kawasaki Ninja motorcycle on the front porch. He generally kept his keys inside the front door, on a coffee table. On that night, Corey did not allow anyone to operate his motorcycle.

{¶5} During the course of the party, Corey met Whitman, a teammate of his father's, for the first time. Corey believed Whitman was dropped off at the party by someone at approximately 7 p.m. At some point, Whitman began asking Corey questions about his motorcycle, including inquiries about the motorcycle manufacturer. Corey believed Whitman knew it was his motorcycle, since he was standing there talking about it.

{¶6} Later that night, at approximately 11 or 11:30 p.m., following activities in the back yard, Corey went to the front yard and discovered that his motorcycle and keys

2

were gone. He initially believed his friends were playing a joke, looked for the motorcycle, but could not locate it. He then called the police to report the motorcycle stolen, between 11:30 p.m. and 12:00 a.m. He explained that no one had asked for his permission to ride his motorcycle.

{¶7} Corey testified that he was later informed by his girlfriend that she saw Whitman on the front porch by himself at approximately 10:45 p.m. Corey believed that Whitman must have entered the house and removed the keys from the front table.

{¶8} William Schultz, Corey's father, testified that he and Whitman played together on a softball team. Whitman was dropped off at the party, where he was drinking. William noted that he could not see Corey's motorcycle during the party, because he was in the backyard. He testified that some guests had seen Whitman in the front porch area during the party. He explained that his home was located approximately six miles from the Ashtabula/Lake county line.

{¶9} Sergeant Larry Harpster of the Lake County Sheriff's Office responded to a motor vehicle accident that took place on Middle Ridge Road in Perry Township, Lake County, just before midnight on July 4, 2008. He explained this location was approximately 20 miles from the Ashtabula County line. As Sergeant Harpster approached the scene, he observed Whitman, who had crashed a motorcycle, lying on the side of the road with open fractures of his leg and arm. Whitman told Sergeant Harpster that he had come from a party in Geneva, had "borrowed a friend's * * * motorcycle," and he should not have been driving because he was "way too buzzed."

{¶10} Sergeant Harpster noted that the motorcycle was totaled and Whitman was "going quite fast" when operating it, which he could tell from the skid marks and the

3

overall scene of the accident. Sergeant Harpster explained that Whitman lives in Lake County and had been travelling west in Lake County at the time of the accident.

{¶11} During the cross-examination of Sergeant Harpster, defense counsel marked the entire police file in the case as an exhibit, which included the accident report, witness statements, a toxicology report, as well as other documents. Counsel questioned Sergeant Harpster regarding an Administrative License Suspension form, which stated that there was probable cause to require a blood draw to determine Whitman's blood alcohol level. The blood draw results revealed that Whitman had a blood alcohol level of .110. Whitman was charged with Failure to Control, OVI, and Driving Under Suspension in Lake County.

{¶12} Robert Fitzgerald, a firefighter and paramedic, also responded to the scene of the accident. He testified that, pursuant to his report, Whitman had admitted to drinking between 6 and 12 beers that night and stated he was driving at approximately 110 miles per hour when he lost control of the motorcycle.

{¶13} Cynthia Swiger and her husband, Larry, were driving when they saw Whitman lying at the side of the road and called for help. Both testified that Whitman stated that he had been to a party in Geneva that night and had "borrowed" the motorcycle.

{¶14} Whitman testified that he was invited to the party by William. After drinking and spending time in the back yard with other party guests, he went to the front of the house and was sitting, thinking about his children. He explained that he took the motorcycle from the front yard, but did not intend to steal it. He "just wanted to take it for a ride." After a period of time riding it, he was going to return back to the party "shortly." He was not heading in a particular direction but was "just riding." He

4

explained that the accident occurred because he was "going too fast and didn't negotiate the turn too well." He suffered serious injuries in the accident and was hospitalized for over a month.

{¶15} Whitman explained that his license was suspended on the date of the party, but he had a ride home from the party and would have called when he wanted to leave. He also testified that he thought other people had been riding the motorcycle that night at the party and the key was in the ignition when he took it. He had never asked to ride or borrow the motorcycle.

{¶16} The jury found Whitman guilty of Grand Theft of a Motor Vehicle, as charged in the Indictment. This verdict was memorialized in the trial court's July 7, 2009 Judgment Entry. A presentence investigation report (PSI) was ordered and the sentencing hearing was scheduled for September 1, 2009.

{¶17} Whitman failed to appear at the scheduled sentencing hearing. A Bond Forfeiture Hearing was held on September 29, 2009, and judgment was entered against Whitman in the amount of $25,000.

{¶18} On April 30, 2013, a sentencing hearing was held. At the hearing, the court noted that Whitman had failed to appear for the September 1, 2009 sentencing hearing. Defense counsel asked the court to delay sentencing and order a PSI to be completed. He explained that Whitman had not appeared for sentencing due to his inability to make arrangements to appear in court, since he was hospitalized at the time. The court stated that a PSI had been previously ordered and Whitman was given two opportunities by the probation department but did not show up as was necessary to prepare the report, and denied the request.

5

{¶19} Defense counsel argued that Whitman was remorseful, had no prior felony record, and he intended to borrow the motorcycle. Whitman stated that he made a bad decision in riding the motorcycle. The State asserted that the fact that Whitman avoided sentencing for three-and-a-half years was an indicator that he would not succeed under community control and requested an 18-month prison sentence.

{¶20} The court stated that Whitman made a "bad decision" regarding the charge in the case and also in failing to appear at the sentencing hearing, and did not show that he "was interested in making a change and demonstrating rehabilitation." The court sentenced him to serve one year in prison.

{¶21} This sentence was memorialized in a May 3, 2013 Judgment Entry of Sentence. In that Entry, the court noted that it had considered the relevant factors under R.C. 2929.11 and .12 and that Whitman was not amenable to community control sanctions based on his lack of cooperation and failure to appear at the prior sentencing hearing.

{¶22} Whitman timely appeals and raises the following assignments of error:

{¶23} "[1.] Trial counsel for Appellant was ineffective in using Defendant's Exhibit 'A' to cross-examine the investigating law enforcement officer when Counsel subsequently requested that said Exhibit be made a part of this case's evidence.

{¶24} "[2.] The trial court committed prejudicial error in failing sua sponte to instruct the jury on the lesser included offense of Unauthorized Use of a Motor Vehicle.

{¶25} "[3.] The sentencing court violated R[.]C[.] 2951.03 when it refused to grant a continuance so that a presentence report could be prepared before Appellant was sentenced."

{¶26} In his first assignment of error, Whitman argues that trial counsel was ineffective by requesting that the entire police case file be made an exhibit, since it contained information damaging to Whitman, including comments about his driving record and other offenses.

{¶27} The State argues that because the exhibit was not presented for the purpose of showing the defendant's bad character, it was admissible.

{¶28} The Ohio Supreme Court has adopted a two-part test to decide whether an attorney's performance is below the constitutional standard for effective assistance of counsel. To reverse a conviction due to ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶ 10.

{¶29} Regarding the prejudice prong, an appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694. "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome' of the proceeding." *State v. Erich*, 11th Dist. Lake No. 2011-L-146, 2012-Ohio-4006, ¶ 15, citing *Strickland* at 694.

{¶30} In the present matter, defense counsel admitted as an exhibit the police file in this case, which is over 50 pages long and included various documents regarding the crime, including the police reports. The file also included a Law Enforcement

7

Automated Data System (LEADS) printout with Whitman's driving record, which included his various driver's license suspensions. Also contained on that printout were statements about him being a "wanted person," with "violent tendencies," and a note of "bad checks/domestic violence/contempt of court." Similar statements were included on a separate note on an additional page of the file.

{¶31} We recognize the basis for defense counsel requesting that the entire police file be admitted is questionable. The State points out that there were documents in the file that helped support defense counsel's strategy that Whitman took the motorcycle because he was drunk, not because he intended to steal it. However, it is not clear why this would warrant admitting the entire police file rather than the relevant documents.

{¶32} Regardless of whether counsel acted reasonably in having the entire file admitted as an exhibit, however, we cannot find that the admission of the exhibit resulted in an unreliable, fundamentally unfair, or prejudicial outcome of the proceeding. There is no evidence that the notes on a few pages of the file were considered by the jury in reaching its verdict. They do not include any statement that Whitman was actually convicted of these prior crimes. The comments at issue were not discussed by either party during the trial at any point or emphasized to the jury in any way. The information in the LEADS printout regarding Whitman's suspended license was already known to the jury, since several witnesses testified to the fact that he had a license suspension.

{¶33} Various courts have held that prejudice does not result when limited evidence of a past criminal history is admitted and there is no indication that this caused a change in the outcome of the trial. *See State v. May*, 3rd Dist. Logan No. 8-11-19,

2012-Ohio-5128, ¶ 77 (since the State did not present any evidence besides the defendant's "short admission" regarding a past aggravated menacing charge, the State did not discuss it in its opening and closing argument, and "there is no indication that this evidence overpowered the jury and caused the outcome of the trial to change," no prejudice resulted); *State v. Harper*, 5th Dist. Guernsey No. 2010-CA-44, 2013-Ohio-4443, ¶ 72 (where the evidence of past misdemeanor convictions was "limited and brief" and there was more than sufficient evidence of the defendant's guilt, the admission was harmless).

**{¶34}** The first assignment of error is without merit.

**{¶35}** In his second assignment of error, Whitman argues that the trial court should have instructed the jury on the lesser included offense of Unauthorized Use of a Motor Vehicle. Although not stated in the text of the assignment of error, he also asserts that he is "currently alleging ineffective assistance of counsel" under this assignment.

**{¶36}** The State argues the evidence presented at trial supports a Theft verdict and that Whitman cannot show that the outcome of the trial would have been different had an instruction for the lesser included charge been given.

**{¶37}** "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

9

**{¶38}** Further, regarding Whitman's assertion that counsel was ineffective by failing to object to the lack of a lesser included instruction, we evaluate an ineffectiveness claim under the two-prong *Strickland* test as described above.

**{¶39}** "[I]n determining whether an offense is a lesser included offense of another, a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 26. A jury instruction on a lesser included offense "is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

**{¶40}** "Grand theft of a motor vehicle," pursuant to R.C. 2913.02, provides the following:

**{¶41}** "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

**{¶42}** "(1) Without the consent of the owner or person authorized to give consent; * * *.

**{¶43}** "(B)(5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."

{¶44} Pursuant to R.C. 2913.03(A), "[u]nauthorized use of a vehicle" occurs when a person "knowingly use[s] or operate[s] * * * [a] motor vehicle * * * without the consent of the owner or person authorized to give consent."

{¶45} "There is no doubt that the unauthorized use of a motor vehicle is a lesser included offense of grand theft of a motor vehicle since the common elements to both offenses are (a) knowing use (b) of a motor vehicle (c) without consent. A fourth element, that of the intent to deprive, is found only in the greater offense of grand theft of a motor vehicle." *State v. Meeks*, 11th Dist. Lake No. 2007-L-057, 2007-Ohio-6559, ¶ 29.

{¶46} In the present case, the evidence supports the conclusion that Whitman committed Grand Theft of a Motor Vehicle. According to the testimony presented, Whitman drove the motorcycle, which he took from Corey's front porch, approximately 25-30 miles from the home where it was taken, while driving upwards of 110 miles per hour. He drove it west, into Lake County, where he lived. Although Whitman stated that he would be "coming back" to return the motorcycle, he did not testify that he had turned back in the direction of Corey's home at the time of the accident. Sergeant Harpster testified that Whitman was travelling west at the time of the accident, which Whitman admitted was away from Corey's residence. Whitman did not know the owner prior to the date he took the motorcycle and could have no belief that he was entitled to borrow it. He also was driving with a suspended license and did not have a vehicle at the party to which he could return. Although Whitman testified that he did intend to return the motorcycle, no evidence was presented to support the position that he was actually going to do so. *See Meeks* at ¶ 33 (where the defendant argued that he left the hospital to return the vehicle when he crashed the car, there was no evidence to

11

support the claim, "especially since there is testimony that [he] crashed the vehicle in Eastlake, a more than twenty minute drive from" where it was to be returned). There is a lack of evidence to support a jury finding that Whitman did not intend to deprive Corey of his motorcycle. *See State v. Gales*, 9th Dist. Lorain No. 00CA007541, 2000 Ohio App. LEXIS 5428, 13 (Nov. 22, 2000) (where the defendant testified that he was going to return the car to the police station, but was arrested in the stolen vehicle, driving in the opposite direction of the police station, and attempted to elude police prior to pulling over, "the trial court did not err in refusing to instruct the jury on the lesser-included offense of unauthorized use of a motor vehicle," since "[u]nder no reasonable view of the evidence could the jury have found that Defendant did not have the purpose to deprive the victim of her property when he took her vehicle").

{¶47} Furthermore, we cannot find that prejudice resulted from the failure to give the instruction of the lesser offense. As this court has noted, it must also determine that, but for the failure to give the jury instruction, the outcome of the trial could have been different. *Meeks* at ¶ 30 ("[a]lthough [the defendant] offered his medical record as evidence that his intent was not to deprive [the owner of his vehicle] due to his hospital visit, we cannot say that but for the failure to give this instruction, the outcome of trial would have been different," based on the other evidence in the record to support a theft conviction). Since there was more than sufficient evidence to convict Whitman of the Theft and limited evidence to support the lesser charge, there was no prejudice in this matter. *See State v. Smead*, 2nd Dist. Montgomery No. 10922, 1989 Ohio App. LEXIS 392, 11-13 (Feb. 7, 1989) ("We cannot say the outcome of this case would clearly have been otherwise had the instruction on the lesser included offense been given as there was sufficient evidence to support the conviction on the indicted charge" and the jury

12

"did decide beyond a reasonable doubt that there was sufficient proof of a purpose to deprive.").

{¶48} To the extent that Whitman raises an ineffective assistance claim for failure to object to the lack of a lesser included instruction, this also fails. As noted above, no prejudice resulted from the failure to object to the jury instructions given. Also, it has been held that defense counsel may utilize the strategy that no lesser included instruction should be given in order to obtain an acquittal, a strategy which will not be second-guessed by this court. *See Smead* at 14-15 ("[c]ounsel may have decided for tactical reasons to leave the jury with no option but to acquit his client"). It appears that such a strategy could have been utilized by defense counsel in the present case. This is supported by counsel's assertion during closing argument, although met with the State's objection, that while the State charged Whitman with theft, it "should have * * * charged him with unauthorized use."

{¶49} The second assignment of error is without merit.

{¶50} In his third assignment of error, Whitman argues that the trial court erred in sentencing him without ordering that a PSI be completed. Whitman asserts that he was prevented from showing the court his lack of a criminal record through the PSI. He also argues under this assignment of error that the court provided limited analysis in support of its sentence and punished him for having an outstanding warrant.

{¶51} The State argues that the trial court was not required to order a PSI, since Whitman was not a good candidate for community control, by virtue of his failure to appear at sentencing and remaining at large for three years.

{¶52} "The decision to order a presentence report generally lies within the sound discretion of the trial court," provided the court follows the statutory mandates requiring

13

them in some circumstances. *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988). Further, regarding the evaluation of felony sentences, this court has followed the standard of review set forth by a plurality of the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, which requires that courts "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *Id.* at ¶ 26.

{¶53} Although Whitman argues that the trial court erred by not allowing the PSI to be filed, such a report was not required in this case. Pursuant to R.C. 2951.03(A)(1), "[n]o person who has been convicted of * * * a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court." In addition, Crim.R. 32.2 states that "[i]n felony cases the court shall * * * order a presentence investigation and report before imposing community control sanctions or granting probation."

{¶54} Various courts have held that both the statute and Criminal Rules require "a presentence investigation only as a prerequisite to granting probation [or community control], and not as a prerequisite to all sentencing proceedings." (Citation omitted.) *State v. Sealey*, 11th Dist. Lake No. 2002-L-100, 2003-Ohio-6697, ¶ 59; *State v. Reglus*, 9th Dist. Summit No. 25914, 2012-Ohio-1174, ¶ 19 ("a presentence investigation report is not required before an offender is sentenced to prison"); *State v. Ewert*, 5th Dist. Muskingum No. CT2012-0002, 2012-Ohio-2671, ¶ 35 ("unless a sentencing court is imposing community control or granting probation in a felony case,

14

there is no requirement that a court order a pre-sentence investigation"). *See also State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992) ("[i]f probation is not at issue," a presentence report is not required).

**{¶55}** Whitman was not sentenced to community control in this matter, so a PSI was not required. As was stated by the trial court, community control was not proper based on Whitman's violation of his bond by failing to appear at the scheduled sentencing hearing. Furthermore, Whitman failed to comply with instructions to aid in the completion of the report, which also justified the court's decision not to delay sentencing further for its completion. *See State v. Zimmerman*, 6th Dist. Sandusky No. S-11-007 2012-Ohio-2813, ¶ 6 ("appellant's own failure to cooperate in the presentence investigation" properly contributed to the court's decision to proceed to sentencing without ordering a PSI).

**{¶56}** Whitman attempts to distinguish one similar case, *State v. Butler*, 7th Dist. Jefferson No. 01 JE 34, 2003-Ohio-3468, which held that a PSI is required only before a community control sanction by arguing that in *Butler*, the defendant faced mandatory incarceration, unlike in the present case. *Id.* at ¶ 53. However, the cases cited above contain no requirement that a PSI report is unnecessary only when incarceration is mandatory.

**{¶57}** Whitman also asserts that the court did not follow the mandates of R.C. 2929.12 to consider the seriousness and recidivism factors, based on the fact that it did not make findings or statements supporting its reasoning for imposing incarceration. However, the court noted that community control would be demeaning to the seriousness of his conduct and stated in its Judgment Entry that it considered the factors under this statute. The fact that the court did not elaborate further on its specific

15

reasons for its sentence does not render its decision an abuse of discretion. There is no requirement that "the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Hutchings*, 11th Dist. Portage Nos. 2011-P-0019, et al., 2012-Ohio-649, ¶ 36, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

{¶58} Finally, Whitman asserts that community control should have been given rather than a prison sentence, since the sentence was solely a punishment for failing to appear for sentencing, not the crime for which he was convicted.

{¶59} At the time of appellant's sentence, R.C. 2929.13(B)(1)(a) stated: "Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence * * *, the court shall sentence the offender to a community control sanction of at least one year's duration if [various factors] apply[.]"

{¶60} However, a trial court "has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence if * * * [t]he offender violated a term of the conditions of bond as set by the court." R.C. 2929.13(B)(1)(b)(iii). When a term of the bond is violated by a defendant, R.C. 2929.13(B)(1)(b)(iii) applies and the trial court can exercise its discretion to impose a prison term. *State v. Doyle*, 4th Dist. Washington No. 11CA35, 2012-Ohio-5464, ¶ 10 (defendant's failure to appear at the jury trial in violation of his bond conditions justified the trial court's prison sentence).

{¶61} Based on the foregoing, the trial court was permitted to order that Whitman serve a prison sentence rather than community control, based at least in part

16

on violating the conditions of his bond. As stated in his personal recognizance bond document, a condition was that Whitman appear before the court as ordered "until there has been a final disposition of this case," which he failed to do by not appearing for sentencing. Thus, we cannot find that the trial court's sentence was improper.

{¶62} The third assignment of error is without merit.

{¶63} For the foregoing reasons, Whitman's conviction and sentence in the Ashtabula County Court of Common Pleas is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

17