[Cite as *State v. Jackson*, 2014-Ohio-3779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-10-192 |
| | : | O P I N I O N |
| - vs - | | 9/2/2014 |
| | : | |
| MICHAEL S. JACKSON, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-04-0555


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Jeffrey W. Bowling, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Michael S. Jackson, appeals from his conviction and sentence in the Butler County Court of Common Pleas for grand theft of a motor vehicle. For the reasons set forth below, we affirm Jackson's conviction and sentence.

{¶ 2} On May 1, 2013, Jackson was indicted on one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(2) and (B)(5), a felony of the fourth degree. The

charge arose following Jackson's February 21, 2013 test drive of a 2006 Jeep Grand Cherokee (Jeep) owned by Eagle Motors, a used car lot, and his subsequent failure to return the Jeep. The indictment specified Jackson, with the intent of depriving Eagle Motors of the Jeep, knowingly obtained or exerted control over the Jeep by deception or beyond the scope of Eagle Motors' express or implied consent.

{¶ 3} A two-day jury trial was held in August 2013, at which time the state introduced testimony from Aundrea Grubb, the manager at Eagle Motors, Darren Weaver, a tow truck driver who repossesses vehicles for Eagle Motors, and Shawn Fryman and Chris Gibson, patrol officers with the city of Hamilton Police Department. Grubb testified she and a male employee were the only two individuals working at Eagle Motors on February 21, 2013. Around 4:00 p.m. that day, Jackson arrived at Eagle Motors by himself on foot and began looking at a 2000 Chevy Sierra truck (Sierra). Jackson told Grubb that his truck was across the street "having racks put on it," and that he was looking for a new vehicle. Jackson asked to test drive the Sierra and told Grubb that he was going to take the truck to "Bridgewater" to have it checked out. Grubb testified she told Jackson he only had 10-15 minutes to drive the truck. Approximately 20 minutes after Jackson left with the Sierra, he returned from his test drive and told Grubb that there was something "a little wrong with it." He then asked to test drive the Jeep, which he told Grubb he also intended to get checked out by "Bridgewater."

{¶ 4} Grubb testified Jackson did not return from his test drive of the Jeep within the allotted time. After 30 minutes had passed, she called "Bridgewater" to find out if Jackson was still getting the Jeep checked out and was informed by "Bridgewater" that the Jeep and Sierra had never been taken there. Around 5:30 p.m., Grubb called the police to report the vehicle being stolen.

{¶ 5} Grubb then explained she is the individual who always answers Eagle Motors' telephone calls. Grubb testified that on February 21, 2013, she kept the cordless phone with

her all day, but Jackson never called. He also never returned to the car lot. Grubbs testified Eagle Motors is a small car lot that holds only 40 to 50 vehicles, and her desk, which is located behind glass sliding doors, faces the parking lot. From her vantage point, Grubb stated she can see the entire lot and would have noticed if Jackson had returned to the lot. Grubb also testified that although the car lot closed at 7:30 p.m. on February 21, 2013, she remained on the lot until 9:00 p.m., hoping that Jackson would return the Jeep.

{¶ 6}   On February 26, 2013, Grubb testified she received a phone call from D & D Auto Sales, a nearby business, who informed her that a Jeep with Eagle Motors' dealership tags was parked on Long Street in Hamilton, Ohio, near the corner of 13th Street. The Jeep was the same Jeep Jackson had failed to return on February 21. Grubb sent Weaver, Eagle Motors' tow truck driver, to collect the vehicle. Grubb stated there was nothing wrong with the Jeep when it was returned, except a problem with one of the tires which required a rim to be replaced.

{¶ 7}   Weaver was called to testify about his recovery of the vehicle. Weaver explained that on February 26, 2013, he went to Long Street to collect the Jeep, and upon arriving, he noticed the keys to the vehicle were sitting in the "center cup-holder console." Weaver testified he was able to drive the vehicle back to Eagle Motors and further stated that the Jeep "drove fine."

{¶ 8}   Officers Fryman and Gibson were then called to testify about their investigation into the missing Jeep. Officer Fryman stated he took the report of the stolen vehicle from Grubb on February 21, 2013, and entered the report into the "LEADS database" for stolen vehicles. He further testified that he often patrolled the area where the Jeep was later located as it is a high crime area with considerable drug activity. Fryman testified that he was on patrol on February 21, 24, 25, and 26, and never noticed the Jeep parked along Long Street during his daily patrols of the area.

{¶ 9} Officer Gibson testified that he also frequently patrolled the Long Street area, and he was on duty daily from February 21 through February 26. Prior to February 26, he never observed the Jeep parked along Long Street. However, on February 26, he responded to reports that the Jeep had been located and found the Jeep parked on Long Street, facing the wrong direction. Gibson explained Long Street is a one-way street in which vehicles can only travel west, but the Jeep was parked facing east. Gibson stated that if the Jeep had been parked on Long Street facing the wrong direction prior to February 26, he would have noticed. Gibson testified that the keys to the vehicle were located in the center console area of the Jeep, and the tow truck driver was able to remove the vehicle from the street.

{¶ 10} Following Gibson's testimony, the state rested and defense counsel made a Crim.R. 29 motion for acquittal, which was denied by the trial court. Thereafter, Jackson took the stand in his own defense. Jackson testified that he, his girlfriend, and his girlfriend's child drove to Eagle Motors in his 1994 Oldsmobile and proceeded to look at various vehicles on the car lot. He test drove the Sierra truck, but determined it was a "gas hog" so he asked to test drive the Jeep. He had been driving the Jeep for about 15 to 20 minutes when the Jeep started making a "clanging and banging" noise. Jackson testified it sounded like a problem with the motor, so he pulled the vehicle over on Long Street, with the vehicle facing the correct direction. He called Eagle Motors and a male answered the phone. After Jackson explained the problem he was having with the Jeep, the male told Jackson he would have to have the car towed back to the lot. Jackson refused, telling the male he was not paying to have it towed and he would not be buying vehicle. Jackson claims he, his girlfriend, and her child walked back to the car lot, handed the Jeep's keys to a male employee, got in his vehicle, and left the car lot. Jackson testified he did not know the name of the male he handed the Jeep's keys to, but the male sounded like the same individual he spoke with on the phone. Jackson further testified that although he told the male where the vehicle was

- 4 -

parked, he was not sure the male understood him.

{¶ 11} Jackson denied having told Grubb he had a truck that was across the street getting racks put on it. He further denied having told Grubb that he was going to have either the Sierra or the Jeep looked at by "Bridgewater." Jackson testified he never intended to deprive Eagle Motors of its property. He claimed that at the time the Jeep was located on Long Street on February 26, 2013, he was being held in the Middletown City Jail. Jackson stated he had been in jail from February 25, 2013 through March 6, 2013 on a domestic violence charge.

{¶ 12} The defense rested following Jackson's testimony, and the matter was submitted to the jury. The jury returned a guilty verdict, and Jackson was sentenced to 17 months in prison. The trial court advised Jackson that he was subject to up to three years of postrelease control upon his release.

{¶ 13} Jackson timely appealed conviction and sentence, raising three assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. JACKSON OF THEFT OF A MOTOR VEHICLE.

{¶ 16} In his first assignment of error, Jackson argues his conviction for grand theft of a motor vehicle is not supported by sufficient evidence as the state failed to present evidence that he intended to deprive Eagle Motors of its Jeep. Jackson contends that because the Jeep was left "a couple blocks from where the owner keeps it and in a place well known to the owner," the state could not prove he intended to deprive Eagle Motors of its property.

{¶ 17} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of

the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 18} Jackson was convicted of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(2) and (B)(5), which provides in relevant part that "[n]o person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent. * * * If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree." To "deprive" one of his or her property means to do any of the following:

> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
>
> (2) Dispose of property so as to make it unlikely that the owner will recover it;
>
> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

{¶ 19} A person acts purposefully "when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to

engage in conduct of that nature." R.C. 2901.22(A). "Because, aside from an admission of guilt, no direct evidence of a defendant's purpose can exist, the state must rely upon inferences from the 'surrounding facts and circumstances' to prove purpose." *State v. Sidders*, 3d Dist. Union No. 14-08-24, 2009-Ohio-409, ¶ 26, quoting *State v. Buelow,* 10th Dist. Franklin Nos. 07AP-317 and 07AP-318, 2007-Ohio-5929, ¶ 25. *See also State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus. An individual's purpose or intent may, therefore, be established by circumstantial evidence. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 99, citing *State v. McGraw*, 12th Dist. Fayette No. CA2009-10-020, 2010-Ohio-3949, ¶ 12. A conviction based on purely circumstantial evidence is no less sound than one based on direct evidence as circumstantial evidence and direct evidence have the same probative value. *Widmer* at ¶ 99; *State v. Curtis*, 12th Dist. Brown No. CA2009-10-037, 2010-Ohio-4945, ¶ 22.

{¶ 20} In this case, the state presented evidence that Grubb authorized Jackson to remove the vehicle from Eagle Motors for only 10 to 15 minutes to complete a test drive of the vehicle. Grubb testified Jackson failed to return the vehicle within the allotted time, and that the whereabouts of the Jeep were unknown until the Jeep was located five days later. When the Jeep was located, it was found on the side of the road in a high crime area with the keys sitting in the center console. During the five days that the Jeep was missing, Grubb testified Jackson did not contact her or take steps to inform her where the vehicle could be found. By leaving the Jeep in a high crime area with the keys openly visible in the center console, the Jeep could have easily been stolen by a third party and, therefore, been unrecoverable by Eagle Motors. *See, e.g., State v. Cox,* 3d Dist. Van Wert No. 15-04-16, 2005-Ohio-1605, ¶ 6 (finding the "purpose to deprive" element met where there the state presented evidence that the defendant left the keys in the unlocked vehicle, thereby making the vehicle "easily * * * stolen by a third party"); *In re Moff*, 11th Dist. Portage Nos. 2007-P-

0053, 2007-P-0054, and 2007-P-0055, 2008-Ohio-1656, ¶ 32 (finding the "purpose to deprive" element met where the state presented evidence that an ATV was not returned to the owner following the defendant's ride,"[t]here was no evidence of any intention or effort to return the ATV, and the ATV was left in a location where it was unlikely [the owner] could recover it"). Viewing the aforementioned evidence in a light most favorable to the prosecution, we find that the jury, as a rational trier of fact, was entitled to find the essential elements, including the challenged "intent to deprive" element, proven beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at 259.

{¶ 21} Jackson's first assignment of error is, therefore, overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED FOR [SIC] NOT INCLUDING IN ITS JURY INSTRUCTIONS THE LESSER INCLUDED OFFENSE OF UNAUTHORIZED USE OF A MOTOR VEHICLE.

{¶ 24} In his second assignment of error, Jackson argues the trial court erred by failing to provide a jury instruction on the lesser-included offense of unauthorized use of a motor vehicle. Jackson contends such an instruction was necessary as the state failed to present evidence that he intended to deprive Eagle Motors of its vehicle. Jackson asserts that "[h]ad the jury been given the opportunity to consider unauthorized use of a motor vehicle, the [j]ury could have found [him] not guilty of [grand] [t]heft, yet guilty of unauthorized use of a motor vehicle."

{¶ 25} Crim.R. 30(A) provides that a party may not assign as error the trial court's failure to give to give any jury instructions "unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." The failure to object to a jury instruction in accordance with Crim.R. 30(A) before the jury retires constitutes a waiver, absent plain error. *State v. Lynn*, 129 Ohio St.3d 146,

2011-Ohio-2722, ¶ 12. In the present case, Jackson did not request that the jury be given an instruction on the lesser-included offense of unauthorized use of a motor vehicle or otherwise object to the trial court's jury instructions. Accordingly, Jackson's argument regarding the need for the lesser included jury instruction of unauthorized use of a motor vehicle will be reviewed for plain error only.

{¶ 26} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997). Courts should notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." *Lynn*, 2011-Ohio-2722 at ¶ 14.

{¶ 27} "A party is not entitled to an instruction on a lesser included offense unless the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 20, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192. An instruction on a lesser included offense is not warranted every time "some evidence" is presented to support the inferior offense; rather, there must be "sufficient evidence to allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sic.) *Trimble* at ¶ 192, citing *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992).

{¶ 28} It is uncontested that unauthorized use of a motor vehicle is a lesser included offense of grand theft. *See, e.g., State v. Whitman*, 11th Dist. Ashtabula No. CA2013-A-0031, 2013-Ohio-5822, ¶45; *State v. Moore*, 12th Dist. Butler No. CA2002-12-307, 2003-

Ohio-6255, ¶ 7. Pursuant to R.C. 2913.03(A), a person is guilty of the unauthorized use of a motor vehicle if that person "knowingly use[s] or operate[s] a * * * motor vehicle * * * without the consent of the owner or person authorized to give consent." The difference between the grand theft of a motor vehicle statute and the unauthorized use of a motor vehicle statute is that a fourth element, that of the intent to deprive, is found in the grand theft statute. *Whitman* at ¶ 45.

{¶ 29} Although Jackson denied having intended to deprive Eagle Motors of its Jeep and presented an alternative explanation at trial as to why the Jeep was not returned to Eagle Motors on February 21, 2013, we find that such an explanation did not warrant an instruction on the lesser-included offense of unauthorized use of a motor vehicle. A party is only entitled to an instruction on a lesser included offense where the evidence presented at trial supports both *an acquittal on the crime charged* and a conviction on the lesser included offense. Here, the evidence did not support an acquittal of the crime charged. As discussed during our resolution of Jackson's first assignment of error, the evidence presented at trial supports the jury's finding that Jackson acted with the intent of depriving Eagle Motors of its Jeep. The fact that Jackson failed to return the Jeep to Eagle Motors within the 10 to 15 minutes allotted for the test drive, failed to communicate to Grubb where the vehicle could be found, and abandoned the Jeep in a high crime area with the keys openly visible in the center console, supports a conviction for grand theft of a motor vehicle. As the evidence presented did not support an acquittal of the crime charged, the trial court did not err in not instructing the jury on the lesser included offense of unauthorized use of a motor vehicle.

{¶ 30} Furthermore, a jury instruction on the lesser included offense of unauthorized use of a motor vehicle was not warranted as Jackson presented a complete defense to the charged offense of grand theft. Jackson denied having exerted control of the Jeep beyond the scope of Eagle Motors' consent, claiming that he returned the Jeep's keys to a male

employee on February 21, 2013 after the Jeep experienced "motor problems." Defense counsel then advanced a theory that it was Eagle Motors' male employee who subsequently stole the vehicle and returned it to Long Street five days later. As we have previously held, "when a defendant presents a complete defense as to the substantive elements of a crime * * * an instruction on a lesser included offense is improper." *State v. Rigdon*, 12th Dist. Warren No. CA2006-05-064, 2007-Ohio-2843, ¶ 46. As Jackson denied all culpability and presented a complete defense to the crime charged, we find that the trial court did not err in not instructing the jury on the lesser included offense of unauthorized use of a motor vehicle.

{¶ 31} We therefore conclude that Jackson was not prejudiced by the trial court's decision to not provide an instruction on the lesser included offense of unauthorized use of a motor vehicle. Accordingly, Jackson's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE [TRIAL] COURT ABUSED ITS DISCRETION WHEN IT SENTENCED MR. JACKSON TO SEVENTEEN MONTHS INCARCERATION.

{¶ 34} In his final assignment of error, Jackson contends the trial court abused its discretion by sentencing him to 17 months in prison and three years of optional postrelease control. Jackson does not, however, specify how the trial court erred or in what manner the court allegedly abused its discretion in imposing his sentence.

{¶ 35} As we have previously recognized, felony sentences are no longer reviewed for an abuse of discretion; rather, we review an imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. "When considering an appeal of a trial court's felony sentencing decision under R.C. 2953.08(G)(2), '[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.'" *Id.* at

¶ 7, quoting R.C. 2953.08(G)(2). An appellate court may take any action authorized by R.C. 2953.08(G)(2) only if the court "clearly and convincingly finds" that either: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;" or (2) "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). An appellate court will not find a sentence clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *State v. Warren*, 12th Dist. Clermont No. CA2012-12-087, 2013-Ohio-3483, ¶ 7; *State v. Sturgill*, 12th Dist. Clermont Nos. CA2013-01-002 and CA2013-01-003, 2013-Ohio-4648, ¶ 37.

{¶ 36} Having reviewed the transcript of August 14, 2013 sentencing hearing and the judgment entry of conviction, we find no err in the imposition of Jackson's sentence. At the sentencing hearing, the trial court indicated it had considered the purposes and principles of sentencing and the seriousness and recidivism factors and determined that Jackson was not amenable to a community control sanction given his prior domestic violence felony conviction and "long and extensive criminal record, including at least one stay at the Ohio Department of Corrections back in 2008." The court imposed a 17-month prison term, advised Jackson that he was subject to up to three years of postrelease control following his release from prison, and informed Jackson of the potential consequences for violating the conditions of his postrelease control. The trial court's findings were incorporated in the judgment of conviction entry.

{¶ 37} As the record demonstrates that the trial court considered the purposes and principles of R.C. 2929.11 as well as the factors listed in R.C. 2929.12, appropriately concluded that Jackson was not amenable to a community control sanction pursuant to R.C.

2929.13(B), imposed a sentence within the permissible statutory range for a fourth-degree felony in accordance with R.C. 2929.14(A)(4), and properly applied postrelease control, we find that Jackson's sentence is not clearly and convincingly contrary to law. *See, e.g., State v. Henry*, 12th Dist. Butler No. CA2013-03-050, 2014-Ohio-1318; *Warren*, 2013-Ohio-3483 at ¶ 6-10. Jackson's third assignment of error is, therefore, overruled.

**{¶ 38}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.