[Cite as *State v. Little*, 2014-Ohio-4756.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO, :

    Plaintiff-Appellee, :

     :

- vs -      :

     :

LARRY TROY LITTLE, :

    Defendant-Appellant. :

CASE NO. CA2014-01-020

O P I N I O N
10/27/2014


CRIMINAL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case No. 13CRB03764-A


Ashley M. Bretland, Middletown City Prosecutor, One Donham Plaza, Middletown, Ohio 45042, for plaintiff-appellee

Matthew T. Dixon, 16 North Main Street, P.O. Box 44933, Middletown, Ohio 45044, for defendant-appellant


**S. POWELL, J.**

{¶ 1} Defendant-appellant, Larry Troy Little, appeals from his convictions and the forfeiture of his property in the Middletown Municipal Court after he was found guilty of one count of selling beer, intoxicating liquor, or alcohol without a permit, as well as three counts of selling or furnishing beer or intoxicating liquor to an underage person, all first-degree misdemeanors. For the reasons outlined below, we affirm in part, reverse in part and

remand for further proceedings.

{¶ 2}  On July 21, 2013, Little was arrested and subsequently charged with the above named offenses after officers from the Middletown Police Department executed a search warrant at Little's home located at 413 Clark Street, Middletown, Butler County, Ohio.  A one-day bench trial was then held on November 20, 2013.  Following the bench trial, Little was found guilty and ordered to serve 180 days in jail and to pay court costs.  The trial court also ordered the forfeiture of a television and two fans located in Little's living room, the alcohol that was found in his kitchen, as well as $4,861 in cash located on his person and in his upstairs bedroom closet.

{¶ 3}  Little now appeals, raising three assignments of error for review.  For ease of discussion, Little's first and second assignments of error will be addressed together.

{¶ 4}  Assignment of Error No. 1:

{¶ 5}  THE EVIDENCE PRESENTED AT TRIAL CONSIDERED IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION IS INSUFFICIENT TO SUSTAIN A VERDICT OF ILLEGAL SALE OF LIQUOR OR FURNISHING ALCOHOL TO AN UNDERAGE PERSON.

{¶ 6}  Assignment of Error No. 2:

{¶ 7}  TRIAL COURT'S VERDICTS ON THE CHARGES OF ILLEGAL SALE OF LIQUOR AND FURNISHING ALCOHOL TO A MINOR WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8}  Under his first and second assignments of error, Little argues his convictions must be reversed as they were based on insufficient evidence and against the manifest weight of the evidence.  We disagree.

{¶ 9}  At the outset, we note that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10, quoting *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386 (1987). Nevertheless, although the two concepts are different, it is now well-established that finding a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19, citing *State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 10. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43; *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 54.

{¶ 10} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 11} However, "[w]hile appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. As a result, we will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and

CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 12} Little was convicted of one count of selling beer, intoxicating liquor, or alcohol without a permit in violation of R.C. 4301.58(B), a first-degree misdemeanor. Pursuant to that statute:

> No person, personally or by the person's clerk, agent, or employee, who is not the holder of an A, B, C, D, E, F, G, I, or S permit issued by the division, in force at the time, and authorizing the sale of beer, intoxicating liquor, or alcohol, or who is not an agent or employee of the division or the tax commissioner authorized to sell such beer, intoxicating liquor, or alcohol, shall sell, keep, or possess beer, intoxicating liquor, or alcohol for sale to any persons other than those authorized by Chapters 4301. and 4303. of the Revised Code to purchase any beer or intoxicating liquor, or sell any alcohol at retail.

{¶ 13} Little was also convicted of three counts of selling or furnishing beer or intoxicating liquor to an underage person in violation of R.C. 4301.69(A), also a first-degree misdemeanor. That statute provides:

> Except as otherwise provided in this chapter, no person shall sell beer or intoxicating liquor to an underage person, shall buy beer or intoxicating liquor for an underage person, or shall furnish it to an underage person, unless given by a physician in the regular line of the physician's practice or given for established religious purposes or unless the underage person is supervised by a parent, spouse who is not an underage person, or legal guardian.

{¶ 14} At trial, Detective James Wilcox of the Middletown Police Department testified they had received numerous complaints regarding an illegal and unpermitted after-hours bar at Little's home. As a result of these complaints, Detective Wilcox testified a controlled purchase of alcohol from Little was conducted by two confidential informants using marked bills. Following the controlled purchase, Detective Wilcox testified they obtained a search warrant for Little's home, which was then executed on the night of July 21, 2013.

{¶ 15} According to Detective Wilcox, approximately 50 to 60 people were at Little's home that evening drinking beer and other alcoholic beverages, three of whom were under

the age of 21.  As Detective Wilcox testified in describing the scene:

> Yes, uh there was music playing, there was a TV on in the kitchen, uh the entire downstairs of the uh address umm had been basically turned into a bar.  Uh the kitchen area appeared to be the main bar area.  What would be the living room appeared to be the dance floor equipped with uh fans.  Umm, there were several other small rooms umm off that living room.  Umm, there was a upstairs; a staircase that had a door on it which was padlocked; which Mr. Little later identified as being the area of the residence that he lived in.  Uh the rest of it was uh the uh after-hours portion.

{¶ 16} Detective Wilcox also testified that the search of Little's upstairs bedroom uncovered "a large number of receipts" for alcohol purchases, as well as numerous business cards with Little's name referencing "an after-hours party" and "party supplies" at a nearby address.  The officers later discovered $587 on Little's person, with an additional $204 hidden in his shoe and $4,070 in a Crown Royal bag located in Little's upstairs bedroom closet.  It is undisputed that the money located in the Crown Royal bag included the marked bills used by the confidential informants during the controlled purchases of alcohol from Little.

{¶ 17} Continuing, Detective Wilcox testified Little was then arrested and transported to the Middletown Police Department.  Once there, Detective Wilcox testified Little agreed to speak with him after he was read his *Miranda* rights.  Detective Wilcox then testified that although Little initially denied selling any alcohol at his home that evening, Little later "apologized" and claimed "his intention was to come to the police department to find out what he needed to do, to do this legally umm so he wouldn't get in trouble and avoid all this all this [sic] trouble."  The state then rested.

{¶ 18} After the state rested, Devonte Thornton, one of the three underage persons found at Little's home that evening, testified as part of Little's defense.  According to Thornton, although he had been drinking earlier that night, he did not drink any alcoholic beverages while at Little's home.  Thornton also testified that he had never personally

purchased any alcohol from Little, nor did he see anybody else purchase any alcohol from Little that evening. Instead, although acknowledging he had been at Little's home for over an hour, Thornton testified he "was just in the livin' room * * * hangin' out for a second" when the police arrived to execute the search warrant.

{¶ 19} Little also testified as part of his own defense. According to Little, he was just a "bored" and "single guy" that "didn't mind friends comin' over" to his house to hang out and party. Little then testified that he did not advertise for any after-hours party at his home and denied that he was running an after-hours bar. As Little testified, "I never told nobody, you know, it was just like he heard, you know, so people just come when they ain't got nuthin' to do, you know * * *." Little further testified that the business card found in his bedroom was personal and "really just for females." As Little explained, if the business card was advertising for an after-hours party "I wouldn't have my e-mail address" because "I would think actually you too drunk to e-mail somebody you know at two (2) in the morning * * *."

{¶ 20} In addition, Little testified he never sold or furnished alcohol to anybody under the age of 21. Specifically, as it relates to Thornton, Little testified "Naw he didn' have nuthin, * * * nuthin at all." Furthermore, when asked about the significant amount of alcohol found in his house, Little testified:

> Just for me and some of my friends. They would buy stuff. I wasn't drinkin' half of that stuff. Some of my friends they would drink some of my stuff. I had a extra bedroom house, so my house was welcome to my friends. If you wanted to come by and spend the night you could. Hey, crash out, stay here. I'm bored in the house I might wanted some company sometimes.

{¶ 21} Little then testified that the $4,861 found on his person and in his upstairs bedroom closet was part of a $250,000 settlement he and his ex-fiancé received following the death of their child. Thereafter, when explicitly asked if the money found in his house was derived from selling alcohol, Little testified "No, not at all." Rather, when asked how the

marked bills from the confidential informants were included as part of the money found in the Crown Royal bag, Little testified:

> I mean I don't know it was somebody was exchangin' money I mean we bought food. Different people would buy food. We would barbecue at the house and you know, maybe they changed money. I never sold anybody anything. You know we would switch turns who payin' for the barbecue 'cause you know they was watchin' the house they know sometime we would barbecue and we would go to [the store] and some people would get pends [sic] on who's buyin' food for that night. Some people get shrimp or fish, so get different things and we would go in, you know, on the monies, so I don't know at some point in time that, you know, with a few people at the house somebody need some change or whatever.

{¶ 22} Little also testified the officers never found any receipts for alcohol within his bedroom. According to Little, "they said they found some they didn't find no receipts in my bedroom."

{¶ 23} As can be seen, just like most cases, this case comes down to the credibility of the witnesses. The trial court, however, clearly found Detective Wilcox's testimony that Little was running an after-hours bar out of his home to be more credible, thereby disbelieving Thornton and Little's testimony to the contrary. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Applegate*, 12th Dist. Warren No. CA2013-08-070, 2014-Ohio-1697, ¶ 20, quoting *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39. In turn, "[a]s the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the trial court's finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13.

{¶ 24} Moreover, although faced with conflicting evidence, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight

of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. This is true regardless of the fact that the evidence presented at trial was purely circumstantial. "A conviction based on purely circumstantial evidence is no less sound than one based on direct evidence as circumstantial evidence and direct evidence have the same probative value." *State v. Jackson*, 12th Dist. Butler No. CA2013-10-192, 2014-Ohio-3779, ¶ 19, citing *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 99.

{¶ 25} In light of the foregoing, because the evidence presented at trial does not weigh heavily in favor of acquittal, and in fact verges on overwhelming evidence of his guilt, we simply cannot say the trial court erred and clearly lost its way by finding Little guilty as charged. Therefore, having found Little's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, Little's first and second assignments of error are overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE MONEY AND PROPERTY SEIZED FROM THE DEFENDANT'S RESIDENCE WAS NOT PROPERLY SUBJECT TO FORFEITURE, OR IF IT WAS, THE PROSECUTION DID NOT PROPERLY FOLLOW THE STATUTORY PROCEDURE TO PERMIT THE IMPOSITION OF FORFEITURE AS A PENALTY UPON CONVICTION.

{¶ 28} In his third assignment of error, Little argues the trial court erred by ordering the forfeiture of the television and two fans located in his living room, as well as the $4,861 in cash located on his person and in his upstairs bedroom closet.[1] We agree.

{¶ 29} Pursuant to R.C. 2981.04(A)(1),

Property described in division (A) of section 2981.02 of the

---

1. Little does not challenge the trial court's decision finding the alcohol confiscated during the execution of the search warrant was subject to forfeiture. As stated in his appellate brief, Little "has not sought to claim ownership of the confiscated liquor" taken from his home.

Revised Code may be forfeited under this section only if the complaint, indictment, or information charging the offense or municipal violation, or the complaint charging the delinquent act, contains a specification of the type described in section 2941.1417 of the Revised Code that sets forth all of the following to the extent it is reasonably known at the time of the filing:

(a) The nature and extent of the alleged offender's or delinquent child's interest in the property;

(b) A description of the property;

(c) If the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.

{¶ 30} It is undisputed the state did not include a forfeiture specification as part of the charging document. However, even when the charging document does not contain the required forfeiture specification R.C. 2981.04(A)(2) provides:

If any property is not reasonably foreseen to be subject to forfeiture at the time of filing the indictment, information, or complaint, the trier of fact still may return a verdict of forfeiture concerning that property in the hearing described in division (B) of this section if the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice of this fact to the alleged offender or delinquent child under Criminal Rule 7(E) or Juvenile Rule 10(B).

{¶ 31} Based on the plain and unambiguous language of the statute, the provisions in R.C. 2981.04(A)(2) apply only if: (1) the property subject to forfeiture is not reasonably foreseen to be subject to forfeiture at the time of filing the charging instrument, and (2) the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice to the offender or delinquent child under the applicable criminal or juvenile rule. In all other instances, i.e., where the property is reasonably foreseen to be subject to forfeiture, the state must comply with provisions found in R.C. 2981.04(A)(1).

{¶ 32} After a thorough review of the record, we find it should have been reasonably foreseen by the state that the $4,861 located on Little's person and in his upstairs bedroom

closet during the execution of the search warrant would be subject to forfeiture as proceeds derived from the offenses at the time the charging document was filed. The same could be said for the television and two fans located in Little's living room as those items may also constitute instrumentalities of the offenses.[2] Nevertheless, the state did not include a forfeiture specification as part of the charging document as required by R.C. 2981.04(A)(1). Again, pursuant to that statute, property that is reasonably foreseen to be subject to forfeiture may be forfeited "only if" the charging document contains the necessary forfeiture specification under R.C. 2941.1417. That simply did not occur here. Therefore, the television, two fans, and $4,861 confiscated from Little's home during the execution of the search warrant were not subject to forfeiture.

{¶ 33} Moreover, even if we were to find it was not reasonably foreseen that the property would be subject to forfeiture, the record is devoid of any evidence that the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice of this fact to Little under Crim.R. 7(E) as required by R.C. 2981.04(A)(2).[3] Rather, based on the record before this court, the state requested the forfeiture of the property only after the trial court issued its ruling finding Little guilty. This hardly constitutes giving "prompt notice" to the offender that the property was subject to forfeiture.

{¶ 34} Given these deficiencies, the trial court had no authority to order this property be forfeited.[4] Therefore, based on the facts and circumstances of this case, and regardless

---

2. Due to the uncertain and ambiguous nature in which they were used, we question whether the television and two fans were subject to forfeiture as instrumentalities of the offenses. Assuming that they were, it could just as easily be said the toilet used by Little's patrons, although exempt from forfeiture as a fixture, would also constitute an instrumentality of the offenses. Regardless, whether the television and two fans were instrumentalities subject to forfeiture is not determinative of our holding. Therefore, we offer no opinion as it relates to that issue here.

3. The record does contain a request for a bill of particulars filed by Little's original trial counsel on August 5, 2013. Nothing in the record indicates the state ever responded to that request.

4. The state claims Little waived any challenge to the notice requirements as he failed to raise the issue before the trial court. Notice, however, is a procedural requirement contained in both R.C. 2981.04(A)(1) and (2) that

of whether this matter falls under R.C. 2981.04(A)(1) or (2), Little's third assignment of error is sustained and the trial court's decision ordering forfeiture of the television, two fans, and $4,861 in cash confiscated from Little's home during the execution of the search warrant is reversed and this matter is remanded to the trial court for further proceedings.

{¶ 35} Judgment affirmed in part, reversed in part and remanded.

RINGLAND, P.J., and M. POWELL, J., concur.

---

must be given to the alleged offender in order to establish the trial court's authority to order a forfeiture. This constitutes a matter of subject-matter jurisdiction that cannot be waived. *See, e.g., State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶ 136 (finding unpersuasive the state's argument that appellant waived the notice requirement by failing to object to the forfeiture in the trial court); *see also State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 10 (objections to subject-matter jurisdiction cannot be waived).